Thank you very much, your honor, justices of the court, may it please the court and counsel. First and foremost, I'd really like to give my appreciation to the staff at the Fifth Circuit, including and especially Ms. Engelhardt for putting this together. It took a lot of work, and I humbly and greatly appreciate the opportunity to do this. Once again, my name is Martin Circhile. I'm attorney with the law firm of Circhile and Associates, and I have the honor to represent a young man named T. B. We may call him the student today. In allegations, he was a victim of discrimination based upon disability, pursuant to both Section 504 of the Rehabilitation Act of 1973 and the Americans with Disability Act. The claim is against the Northwest Independent School District. The facts are rather simple. The facts are rather simple. There's two clusters of facts that emanate from the case. The first were in early February or so of 2017 related to a gentleman who worked for the district named Mr. Burt. And the second was a cluster of facts that occurred in April of 2017 regarding his special education teacher, Ms. Adams. We think the juxtaposition of the two are important because in the second, dealing with Ms. Adams, we allege in our briefs and shows in the record that she was losing patience with the young man. He stood on top of the table. He tried to get away from her. In response, she knocked him to the ground, dragged him through two classrooms, and climbed on top of him and later kicked him. As compared to the cluster of facts dealing with Mr. Burt, I think in retrospect, and upon our review of the emerging case law, briefing of counsel, the district judge's order, it's clear to us that those claims really are educational in nature, the ones related to Mr. Burt. And in retrospect, we agree that those claims should have been administratively exhausted, and because they were not in a timely manner, they're no longer actionable in federal court. As a juxtaposition, though, we look at the facts and the acts related to the young man in regard to Ms. Adams, and we see those claims clearly are not educational in nature. We'll hear a lot about Frye today. I'm sure Ms. Walker will talk about Frye, and we will, and I imagine some questions from the court will also deal with the Frye case. But the Frye case is interesting because it brought forward to us a couple of hints, which we'll also talk about, and it also has very, very important footnotes, footnote 9. I'm sure the court's well familiar with it. I'll look at it a little bit here. But what's interesting about the footnote was when the National Association of School Boards before the federal court, they briefed this issue, and, in fact, they offered it up also in oral arguments that if a teacher is acting out of animus or frustration, then it's highly likely that such a claim where the child's also being injured, it's highly likely that such a claim is not educational in nature. They also talk, say, about telling indicators in the footnote, which also, you know, is a key word, hence. And they say that a child can find the same kind of suit against an official at another public facility for inflicting such physical abuse as could an adult We'll also see... I don't... Shirley, I don't see Judge Higginson. Uh-oh, I'm here. I hear you. His signal may have gotten a little lower, and his picture may have disappeared for you, but he is there. Okay, thank you. Sorry to interrupt. No, I'm glad you did, Your Honor. Actually, that's a perfect segue, because I was just going to cite to the Lance case that I think is Honor Higginson penned. In that, he writes, the Lance's peer-on-peer harassment claim is not necessarily predicated on the denial of faith. And we would use that also as a parallel to say that when the teacher harasses a student, when it's not just peer-on-peer harassment but teacher-on-teacher harassment, then that, too, is not necessarily denial of faith. So we look to the history of the court and the Fifth Circuit in the Lance case. We look to Frye in dealing with the issue of animus and frustration in ways that the teacher acted upon the young man. We talk about the two hints once again that certainly a claim... The young man could have a claim outside the school district, for instance, against a police officer, that he had been abused in such a way, as could an adult who came to the school, let's say, for an adult education class or an educational meeting with a parent or someone else and arguably a school official, even a school resource officer, if someone else injured that person. So we think, as far as the hints go in Frye, we satisfy those issues. One of the things that happened also recently as we look at the involvement of this issue over the course of recent time... Excuse me. We had a case before the court. It was a Doe versus the Dallas Independent School District case. And one of the things that case did, it highlighted, is this issue of the hints and what they mean. If we go back and we look at the Frye case, we see that Supreme Court Justices Amelito and... also had a problem with the hints because they didn't think they should be dispositive. They said, you know, they're hints, but they shouldn't be ends in themselves. But we were before the panel in the Doe versus Dallas Independent School District case. They further refined that and said, you know what, sometimes there are hints that are valuable, but it may not be those hints. There may be other hints. And in that particular case, they understood that the hint is, could other students who were so injured in that Title IX case file a case without going through exhaustion? And, of course, the answer is yes. We have a similar parallel here. Could a regular ed student who had been abused by a teacher, would that student have to go through exhaustion? The answer is, of course, no. We also know that if a student with a disability is not receiving Title IV services or not receiving special education services, that student doesn't have to go through exhaustion. And if we look to the guidelines set forth in Lance, once again, even a student who may be a 504 student who was injured by a teacher does not necessarily have to go through exhaustion. So, once again, based upon evolving case law regarding the exhaustion issue and relying upon the commentary and decisions by the Fifth Circuit panel in the Doe versus Dallas case, we don't think this young man needs to go through exhaustion either. If the court is looking for a hint to help us decide whether or not these types of cases have to go through exhaustion, this would be the hint that I would offer. Did they teach Ms. Adams to do this in college? Did Texas A&M, the University of Texas, Tulane University, or the school district, for that matter, teach Ms. Adams to control this young man in that way? Oh, thank you. Oh, thank you, Mr. Circhile. You're open for questioning now. I certainly am, Your Honor. And I would start that off by saying I imagine the school district is going to raise the fact that you barely referred to Fry when you objected to their motion to dismiss. Why haven't you waived your substantive arguments here? Yes, thank you, Your Honor. I anticipated that question and other questions related to that. When we filed our complaint, we very, very, very purposefully did not include any language related to IDEA. We did not include any language related to special ed. We did not include any language related to due process hearings or TEA or administrative hearings at all. So when counsel for the school district filed her motion to dismiss, our response was, which we think is black-letter law, that you have to rely on the pleadings. I'm speaking to the judge when we filed our response. Your Honor, looking to Judge McBride, Your Honor, you need to follow what it says in the pleadings. There's nothing in the pleadings that talks about special ed or IDEA or IEP or FAPE or behavior plans or restraints or anything. And because of that, it's not right. It's not right. And the court is supposed to close its eyes to the fact that your complaint simply, as you say, or as I would say, scrubbed, referenced anything that might require exhaustion under IDEA because, after all, you were about to file or had filed a lawsuit on that, had pursued those remedies, and only when you were denied access to an IDEA remedy did you file in federal court. Can the court not take judicial notice or be informed of that by the district? Actually, the answer to that, of course, is yes, but the related aspect of that is when can they take judicial notice of that? So when the school district wrote their motion to dismiss, they did not include anything in the previous case. They did not cite to the previous case in the due process hearing. They did not ask the court for judicial notice to that. There is nothing in their particular motion to dismiss that alludes to any previous action. So why should I have to answer to that in my response? Our position, once again, black-letter law, is court has to deal with the pleading. Now, they do relate to this case, I think it's Williams, Williams v. Tucker case, and then the judge uses that later on, which I think intimates your question as well, Your Honor, about looking outside the pleadings to help deal with an issue regarding jurisdiction. I think what's interesting about that particular case that the Fifth Circuit had is that it was based upon a motion for summary judgment. It was based upon significant amounts of discovery. It was based upon a number of times that people had the ability to amend their complaint. And by the way, going back to our response to the motion to dismiss, within that motion, we asked four times to amend the complaint, Your Honor. But going back to your particular question and Williams, Williams was interesting because it, once again, permitted and, in fact, required the court to look at particular types of evidence. If we looked at the judge's order after that motion to dismiss, he did not speak to what evidence he was even referring to. He took the facts that were addressed by counsel for the school district without the restraint. He took the fact that the school district talked about special education, and he took those as true. And that's just something he cannot do. Any other instances related to education are also handled in the Doe case, if we remember, because one of the arguments that was used by counsel, was used by the judge, was a case he relied upon that he had penned earlier, was that because we had asked for equal access to educational opportunity, that somehow that transformed the case into a special education case. And that particular proposition was rejected in Doe for the very reason that any child who's injured at school, whether it be special ed, Title IX, Title VI, 1983, whatever it may be, has to show a violation of education, has to show educational harm. And, in fact, any child in school is always going to show educational harm. So just because we put that in our claims did not automatically turn it into a special education case, which, of course, is wrong. Mr. Sergio? Yes, Your Honor. At the outset, you were helpful to parse out and acknowledge that the Burke facts would be subject to exhaustion. You had multiple claims here. One of them that seems most assault-related is the Fourth Amendment one. Do you have a case that comes to mind that says that exhaustion has to be looked at claim by claim rather than in the whole? Are you even arguing that? Actually, maybe to clarify the record, the only thing we have before the Fifth Circuit are the disability discrimination claims, Your Honor. But what about my legal question? To look at exhaustion, do you have to go claim by claim? Yes. Yes. And what's the best authority for that? I think it's the PG versus Rutherford case, Your Honor. I may have to get back to you when I have my rebuttal period to give the exact site. But the working case law does show, which is typical, that there are some claims that do need to get exhausted and there are some claims that don't need to get exhausted and that the court has a duty to move through those and make a determination which is which. Thank you. Thank you, Your Honor. I'm making a note for myself here. Thank you. Any other questions? You have a companion case. That doesn't relate at all to this one. In what stage of that companion appeal are you at? That's important. One of the things we never get a chance to talk about here is not just the facts and not just the law but the lawyering. So that question kind of intimates the lawyering. So early on, we filed the case with the Texas Education Agency for a due process hearing. And one of the reasons we did that is because in Texas, the mediation component that TVA has is very strong. And IDEA also has what's called a resolution duty where the parties have to meet and talk about the case. So we've been very, very fortunate over the years that when we have cases that we file with TVA that also sometimes have injury components, we have been able to settle many of them. And I don't mind saying, because it's something that I'm very proud of, that over the many years I've done this, and Justice Jones knows I've been doing this a long time, we've only had three hearings. Our group has had 30% of all the mediations in Texas over the last 10 years. Bottom line... We went into this process to seek resolution. I'm sorry, Your Honor. Yeah, your time is up, and we don't want you wandering on. What's the answer to the question? I'm sorry, Your Honor. Thank you very much. Just quickly, and I can pick it up more specifically in my rebuttal, but that case is being heard at the district court. It's being decided right now, and I'll be able to comment on that much more fully in a few minutes if you'd like. I thought that was an untimely lawsuit or commencement of idea remedies. Well, that's a perfect question. If you want me to answer it now, I will, Your Honor. So what happened... Well, no, you can leave that for rebuttal. Thank you. Thank you very much, Your Honor. Thank you. Okay, Ms. Walker. Thank you. My name is Meredith Walker, and I'm here on behalf of Appali Northwest Independent School District. The district court in the underlying matter correctly dismissed TB's claims for lack of subject matter jurisdiction due to TB's failure to exhaust his administrative remedies. The district court also correctly denied TB's motion for reconsideration. The court should affirm the district court's decisions in full. What TB essentially wants this court to find is that any time a student is physically hurt at school at the hands of the school district's employee, that the student never has to exhaust his administrative remedies under the IDEA. The school district agrees, and we acknowledged in our brief several times, that there are some instances where exhaustion is not required. For instance, in the recently decided Doe v. Dallas ISD matter. But here, TB cannot escape his prior representations that the alleged physical faults related directly to TB's receipt of special education under the IDEA. In making his argument in the reply brief, I just wanted to note for the court that he raised several new arguments, some that he erased on his opening argument today. And specifically with respect to the Williamson case, I'm not going to address those arguments because we believe that they've been waived. But I will note about Williamson that we don't believe that it is actually on point and that it is not a proper gauge for what the court should be looking at here. Because when you look at Williamson, what the court's going to find is that the district court issued approximately a five-page order ruling on a motion to dismiss under 12b-6 and a motion for summary judgment. So what this court said was that it wasn't clear what action the district court was ruling on and it wasn't clear what facts he was relying on. Was he taking the facts in the complaint as true for purposes of the 12b-6? Or was he taking the facts in the MSJ and entering them to the benefit of the plaintiff in that matter? That's not the case that we have here. We're looking at the facts that have been pleaded by plaintiffs, by TB in the underlying complaint. And when you look at those, it becomes clear that exhaustion is required. So turning to the first issue before the court, the district court correctly dismissed the complaint because TB first waived all arguments in support of subject matter jurisdiction because he didn't timely brief anything. Once the school district filed its motion to dismiss, TB responded with three arguments. And I call them arguments, but they were more along the lines of statements. He said that his complaint did not identify TB as a student receiving special education and related services. He said any inferences in the First Amendment complaint inured to his benefit. And then he said subject matter jurisdiction is not right for adjudication. But as this court knows, subject matter jurisdiction is always right for adjudication because the court has to have subject matter jurisdiction before it can hear a case. So because he didn't respond, the district court looked at the school district's arguments, granted our motion to dismiss, and TB then filed a motion for reconsideration. But in the motion for reconsideration, he raised all arguments that should have been previously briefed. And this court has held that a motion, a Rule 59e motion, cannot be used to raise arguments which could and should have been made before the judgment issued. Setting the waiver issue aside, the district court correctly determined it lacked subject matter jurisdiction based on the relevant case law. When the court looks at Frye v. Napoleon, Frye absolutely gave lower courts some guidance in determining the gravamen of a plaintiff's complaint using the two hypothetical questions. And the court knows what those are. Could the plaintiff have brought the same claim against a public facility, and could an adult at the school have pressed the same grievance? But the court, the Supreme Court, went on to note that the history of proceedings was relevant to this as well. And it specifically said, did plaintiff previously invoke IDEA's formal procedures to handle the dispute, thereby invoking IDEA's remedies before switching midstream? This court in Doe v. Gallas specifically recognized that the Supreme Court did not limit its analysis of this question to answering or to the subject matter jurisdiction question and answering those two illustrative hypotheticals. So we believe that the second test is more pertinent and more telling here because prior to invoking the district court's jurisdiction in this matter, they filed an IDEA process hearing. Now, Mr. Sterkiel was about to go down the road of saying they wanted to do this, they wanted to mediate, but the fact of the matter is that claim is still pending before the federal district court in the northern district of Texas. It's in front of Judge O'Connor. And that court, that case right now, I'm sorry, we can send it to the magistrate judge. And that case is pending on a motion for judgment on the administrative record. So you can't escape the fact that they're appealing their IDEA matter on one hand and then saying this case has nothing to do with the student's receipt of a fape. And Judge Jones noted earlier, when you do a comparison of the federal complaint or the federal pleadings and the due process pleadings, you see that what has happened is all references to the IDEA and the student's receipt of a fape have been completely scrubbed. When you look at Record on Appeals Citation 216 and 218, you see that they claim that the failure  violated the RA and denied TB a fape. Then you look at 523, and you see that it only violated the RA. When you look at 216, it says that the failure to provide him a safe and non-hostile educational environment resulted in him not receiving academic and non-academic benefits, which is the Michael F. factor, the fourth Michael F. factor. And then when you look at 523, you see that the failure to provide him a safe and non-hostile environment now only violates the RA. You cannot get around and escape these representations. Now, Mr. Surkeel and the student want to rely on footnote 9, and as we addressed in our brief, we agree. There are instances when exhaustion is not required, but Doe is that example, but this case is not Doe because he ties... The student in the complaint ties his educational services and needs back to the alleged assault, and that's seen in looking at the due process hearing. It also is seen... When this court looked at DA v. Houston, it created a new standard in determining when a cause of action gives rise to intentional discrimination, and it said that an inference of professional bad faith or gross misjudgment are necessary. While the complaint doesn't use those exact words, it refers to a... I'm sorry. Did somebody...? It refers to a gross deviation from professional standards of care. But then we also want to look at Doe v. Dallas ISD because one of the things that opposing counsel at Mr. Surkeel noted was that a student without a disability could absolutely bring the same claim against a school district without having to exhaust any administrative remedies. But that simply is not the case because in order to allege a disability claim against a school district either under 504 or the ADA, it's axiomatic that you have to first have a disability. So we have to take students without disabilities out of this. And if the student is alleging that they were denied a fate, that somehow their educational services were impacted by the allegations or by the conduct or that it somehow deprived them of services, then 20 U.S.C. 1415 tells us that those claims have to be exhausted. And, Judge Higginson, to your question earlier, when you look at Section L, Rules of Construction, it specifically says that before bringing claims under the Constitution, Section 504, the ADA, you have to first exhaust if those claims seek relief that's also available under the IDEA. So I think that goes to your question earlier. Now, with respect to Mr. Surkeel's argument that the school district never mentioned the prior case, I wanted the court a little bit of background in that. At the time that we filed our original motion to dismiss, the district did not know opposing counsel was filing an appeal of the underlying due process hearing. There was a service snafu, and the district never became aware of it. Setting that issue aside, Mr. Surkeel himself filed the underlying due process hearing record with the court in this matter. And the fact that the underlying due process appeal or hearing case was filed in this matter lends further credence that this case is about a denial of state. With respect to the district court's question of whether they abused its discretion in denying the 59E and the... excuse me... and the request to amend, it's an abuse of discretion standard. Mr. Surkeel and plaintiff, the student, were given ample opportunity to amend. This was their first amended complaint. They didn't raise the arguments when they should have raised them. It's not an abuse of discretion for the district court to not take those back up. Yes, Judge Jones. You're open for questioning now? Yes, ma'am. Ms. Walker, is it your position that this could not be pleaded as long as they're seeking release under 504 and the ADA? It can't be pleaded because it's always going to have the history of the due process hearing, so you can't cleverly plead this as long as those are the allegations. Is this your position? Correct. In this case, they pled and they pleaded that they believed that the conduct of the employees violated his right to say it. That's the decision they made and that's the path they went down, and so now that is where they are left. Again, Doe v. Dallas ISD and even Frey v. Napoleon are the perfect example of how invoking the IDA's procedures doesn't necessarily mean that the gravamen of the complaint is a violation of faith. But here, it absolutely is. Well, don't you need to refine that a little by saying it's because he pled R.A. and disability check? He didn't plead Title IX. He didn't plead the Fourth Amendment. Absolutely, Judge Jones. You are absolutely correct because it's the 504 and the ADA claims that invoke the exhaustion. And to Judge Higginson's question earlier, I'm sure that there could be claims brought under 1983 for a violation of a host of rights that don't necessarily implicate a student for the appropriate public education. For instance, a claim under the 14th Amendment for bodily integrity, if a teacher takes some kind of inappropriate conduct or there's some kind of inappropriate relationship. And that's in the vein of the Title IX claim and that's in the vein of Doe v. Dallas ISD. Did Judge McBride rely on the history of proceedings as his basis to dismiss? No, when you look at Judge McBride's, he actually relied on the two hypotheticals and Frey is what he relied upon. Being completely up front, when you look at our briefing, we didn't brief the history of proceedings because by the time I realized what was going on, our briefing was done or substantially done. You see my difficulty, though. If we're saying that he's forfeited a critical approach to this case, then we would be relying on one that wasn't cited by the district court to affirm. Right. But my real concern really is, why does forfeiture really apply here? The entire basis for Judge McBride's ruling was fraud. So it's very hard for me to say that a new legal argument was raised. It's just a matter of reading the whole decision. I mean, this was the point that Alito and Thomas made. And so I'm going to ask you to assume he didn't forfeit it. If he didn't forfeit it, isn't this alleged action by Ms. Adams almost verbatim what footnote 9 says is outside of exhaustion? Outside of exhaustion? I guess it depends on whether the court considers it a restraint because there's facts in there that state that the student was eloping, trying to get away, and she was trying to get... But his complaint didn't allege that his client had an IEP. It involved restraints. No, and IEP's never involved. Right, so I think that's the point that judges like Judge Keplech and others have said, which is when you've got an alleged assault, that's never educational. It really can't ever be. That's an insult to the concept of education. Well, I... That's a question. Pardon me. So when... I believe that there's a case that opposing counsel cited in his brief, and that's PG, which we do believe is on point. And there, the court found that exhaustion was required when the plaintiff's complaints pertain to the inappropriate and illegal use of physical restraints. And it specifically said that the gravamen of plaintiff's mechanical restraint claim concerns an action by a teacher in a school setting in an attempt to gain control over a student. And then when you look at the Texas Administrative Code, it's 19 PAC 89.1053. It defines a restraint as the use of physical force to significantly restrict a student's free movement is a restraint. And then when you look back at the underlying due process petition, it couches Burt's and Adam's conduct as a, quote, intervention. And that can be found at the record on appeal at 207-208 and 210. Thank you. You're welcome. Um, should we be using that on the motion to dismiss all of these other things? Just because you filed it, should we be using that? Yes, because under subject matter jurisdiction, the court can look at the pleadings or the court can go outside of the pleadings. And sometimes when the court has to determine subject matter jurisdiction, particularly when you're looking at the previous proceedings, those proceedings become relevant. Is there a film of this? And was it produced? Yes, there was. There was a film of Ms. Adams. There was not a film of Mr. Burt. And I do not believe it was produced in the underlying due process hearing, so it's not in front of the court. And is that the best evidence of whether or not this is a restraint or an assault? That is some evidence, yes. But I believe that the best evidence goes to the way that plaintiff, that TB, pled his complaint. Did he ask for this before having the subject matter jurisdiction be resolved on facts that were not in the pleadings? Ask for what? I'm sorry, Judge Elrod. The film to be included before the district court. No, nobody has requested that the film be included before the district court. Okay. Would it necessarily be futile to replead if he could allege a 1983 claim? That is a good question. There are probably some ways that he could replead where this takes it out of the gravamen of the complaint being a denial of fate. But as it currently stands with the 504 and ADA claims, those absolutely require exhaustion. And under 20 U.S.C. 1415, which I cited Judge Higginson to earlier, even constitutional claims require exhaustion if the gravamen of the complaint is something that's available under the IDEA. So I think the answer to your question is it absolutely depends on what that repleading looks like. But plaintiff's counsel never submitted an amended complaint in the underlying case for Judge McBride. I have never seen a reference to 1983 in counsel's filings. Is that correct? That's correct, Judge Jones. We moved to dismiss the 1983 claims, and Judge McBride dismissed everything under 12b-1, so he never reached our 12b-6 arguments regarding the specific ability to maintain those claims. And he hasn't argued those? Correct. Any other questions? I guess I did have just the legal one. I think you may have already answered it. But is there any circuit law as to whether exhaustion has to be looked at claim by claim versus the whole? I haven't. I'm not aware of any, and I have not looked at that issue. The best side I have is what I gave you, which is the exact site, CDIDEA. And you think if it says plural, then it's okay. That's it for me. Any other questions? So are you taking a position on whether or not the district court was correct in dismissing the 1983 claims that had previously been fled, or are you just saying that that was not ever raised and was on its way? We would go with the latter, Judge Elrod, and that that has never been raised. Okay, no further questions. Thank you very much. Thank you. Mr. Cerquillo, rebuttal? Yes, thank you very much. A couple of brief things. Going back to the division of this case, as originally filed as a due process, and then it also having a component in dealing with the injury relative to 504 and ADA, we appealed that case. We did not switch in midstream. The case is still being appealed. We think as Fry notes, as Lance notes, as DA notes, there's always the possibility that there are claims that are educational, and there are claims that are not educational. Mr. Cerquillo, as you say, you are very experienced in this area. Aren't you well aware that students with this kind of disorder are quite often unruly in class and that hands eventually are laid on them in order to try to calm them down or put them in a cool-down room or do anything to keep them under control, and any one of those could be alleged as a, quote, non-exhaustion claim by article pleading? Well, the issue in this case, Your Honor, once again, are what are the facts pled, and whether we look at it as an exhaustion issue or ultimately as a 12B6 motion, there appears to be a fact issue as to whether or not the acts and omissions of Ms. Adams were educational and not educational. I think the questions... Now let me play this out. If they're not subject to exhaustion, part of your problem was, for whatever reason, your client never took advantage of the idea of remedy until time had elapsed, more than one year had elapsed, but the two years for filing a 19, for filing other kinds of alleged court claims did not last. So your client probably got you into this pickle. But my point is that if exhaustion is never required for this kind of application, what is to prevent exactly what the court was trying to say in Frye, which is that exhaustion is mandatory for claims that are remediable by IDEA, and if they involve excessive or inappropriate restraint by a teacher who's come to the end of her rope, then you remove the student from that teacher. End of story. Why can't you also be able to sue her and the district for damages? Well, Your Honor, once again, that's if we characterize what Ms. Adams did as a restraint. Once again, and I would go back... This kind of answers two questions I don't want the moment to pass. There is no circuit case on splitting the claim, but the case that does talk about that in the district court is P.G. v. Rutherford County Board of Education, 313 F. South Third 891. It's a Tennessee case, it looks like, Your Honor. So to go back to that issue, there's nothing in the facts, Your Honor, that say that it's a restraint. Now, the P.G. Rutherford case, and I think counsel for the school district cited it, and I agree, in that case it was real clear that the individual teacher... In fact, let me rephrase this a little bit differently. If Ms. Adams was in the middle of operating the child's individualized education plan, and if she was in the middle of operating the child's behavioral intervention plan during a restraint, and during the restraint itself the child was injured, then you're absolutely right. I don't have to go through exhaustion because it was an educational intervention, but I don't think anybody can say dragging a kid through the rooms and kicking them is educational. Once again, if we're looking for hints, clearly that's not anything that's taught by the school. I also would like to say, going back to some of the procedural harasses cases, that another Fifth Circuit case that looked at the exhaustion issue was the New Caney case, and in that particular case, the district judge gave that individual four times to amend their complaint. Judge McBride did not even give us more than one real time to amend the complaint, even though we asked for it a number of times in our response. Once again, I look to the law, Your Honor. I've been doing this a long time. I respect you all so much, and I respect the law that we're all here to uphold, and the law is clear on this kind of a case where there is a difference of facts, a perception of the facts. The 12-1 motion, whether it be for exhaustion or any other reason, is not right at this time. Thank you. All right, sir. Thank you very much. That concludes the audience for today. We are in recess until 9 o'clock tomorrow morning. Thank you, counsel.